* Curia, per
Butler, J.
This action was brought under the following clause of the Act of 1796; 5 vol. 284, Stat. at large; “That the sheriffs be, and they are hereby required, to pay over to the plaintiff or his attorney, all and every sum or sums of money which they may respectively receive on account of such plaintiff, within ten days after he shall receive the same, any law, usage or custom to the contrary thereof, in any wise notwithstanding; and if any sheriff shall refuse to pay over the same within ten clays after he shall receive the same, if demanded, then, and in that case, he shall be liable to forfeit and pay to such plaintiff, the sum of fifty per cent, on the sum so received, to be recovered by action of debt; and the respective courts out of which the executions may issue, shall be, and they are hereby, authorized and required to make such rules and orders as they may judge necessary, to carry this Act into effect.”
At the time the money was demanded of the sheriff, in this case, by the attorney of plaintiff in execution, he had deposited the exact sum in bank, and was ready and willing to pay it over to either of the parties claiming it, when their respective claims should be settled by the Court. He did not wilfully withhold it for his own use. Under a notice from the attaching creditors of the defendant in execution, as stated in the report, he kept the money to abide the judgment of the Court. Ultimately, the Court of Equity took jurisdiction of the matter, and the money was paid to the master, to be invested by the consent of parties. The circuit Chancellor decided that the plaintiff was not entitled to the money, but that it rightfully belonged to the attaching creditors, on whose account the bill had been filed This decree was set aside, and finally the money was paid to and accepted by the plaintiff. The question now arises, was the sheriff, under these circumstances, fairly liable to the penalty of the above Act? That he acted in good faith, I think, is unquestionable, and that he had the sanction of a Chancellor for what he had done, is equally true. But it is contended that these afford no justification for disregarding the provisions of the statute, which gives the sheriff no option or discretion after money is demanded of him by the plaintiff on record or in an execution ; but that he is bound to pay it over to such plaintiff, or subject himself to a liability to pay fifty per cent. notwithstanding other claims *may be asserted to the money, which the sheriff may think, in good faith, are better than the plaintiff’s. The effect of which might be, in many cases, to give a fraudulent plaintiff a right to recover fifty per cent, when in fact he was not *121 entitled to the money in the sheriff’s hands. To give this strict and severe construction to the statute, would be to give it an operation frequently revolting to justice, and inconsistent with the intent of the Legislature. The practice of the courts since the enactment of the statute, does not sanction such a construction. Where there have been adverse claims to money in the hands of the sheriff, collected on execution, it has always been the practice for him to hold it subject to the order of the Court; and it has not been unfreqnently the fact that the money was ultimately paid over, not to the plaintiff in execution, but to another having the right to it; and this, too, without any compulsory process from a court, requiring the sheriff to keep the money till the claims to it are settled. Indeed, according to the construction contended for, such process, injunction from Chancery, or an order from the Court of Common Pleas, would be unavailing, as the Act says the money must be paid to the plaintiff in execution, any law, usage or custom to the contrary thereof notwithstanding. In fact, the practice of the courts may be regarded as founded on their own rules in relation to the liability and duty of sheriffs. Where a sheriff lias collected money on a fi. fa., he is not bound to pay it over to the plaintiff in such fi. fa., if there are fi. fas. in the office against him; but the sheriff is justifiable in retaining and paying to the fi. fas. against the plaintiff, the money collected on his account. Nunar vs. Gray, (1 Bail. 440.) In the case of Potts & loor vs. Richardson, the money was raised on plaintiff’s execution, and it was held that the sheriff was not only justifiable in not paying it to the plaintiff, but that a party who claimed under an assignment of an older judgment was not liable to refund it. Nor could it have been contended that in the above cases the sheriff had incurred a liability to pay fifty per cent, to plaintiff, on whose executions he had collected the money. And yet, according to the literal construction of the Act under consideration, such would be the case; for it is said that no law or usage should be allowed to interfere with the rigorous and inexorable operation of the Act. The Act is somewhat of a penal character, and ^should be construed in reference to the mischief intended to be remedied, and with strictness in favor of the party to be affected by it. Where the sheriff has money and wilfully refuses to pay it over to a party unquestionably entitled to receive it, he is fairly liable to the penalty The Act intended to impose on him a penalty for wilful delinquency. Not to allow him to ho^d money for his own use, after another had acquired a clear right to demand it. It certainly never could have been the intention of the Legislature to punish a sheriff who had acted in good faith towards all parties who claimed money in his office. As between a senior and a junior execution, it is frequently very difficult to decide; the greatest judge cannot do it without full investigation. A sheriff, a mere ministerial officer of the Court, has the right to ask the instruction of the Court in all honestly controverted claims against him ; and when he acts in good faith, he should not be subjected to forfeitures that were intended for the wilful defaulter. Good faith should be the criterion of his conduct. It will not do to say that the sheriff may evade the provisions of the statute by fictitious controversies for money in his hands, procured and connived at by himself. They would be too easily detected, to be resorted to with frequency. Indeed, the sheriff ought always to be held *122 liable under the statute, unles he can show that he acted in good faith to all the parties in controversy. And if the defendant in this case acted in bad faith towards one party, with the view of giving the other an advantage, he might be held liable. But this question was not submitted to the jury, and I think would have been of little avail if it had been. Still it is a question which may be submitted to another jury; and I will not say what should be their verdict. The sheriff occupies a very important position to the parties who claim money in his hands, and has it in his power by his own election to prejudice their rights, and I think he is under the highest obligation to act in such a way as not to do one party an irremediable injury, by giving the other an undue preference. Like every stakeholder who is disposed to act justly, he should, under such circumstances, hold his hand. This is presented in a striking point of view by Lord Mansfield, in one of his remarks in the case of Drink-water vs. Goodwin, 255, Cooper. “ The maxim of law which says it shall not be in the power of any man, by his election, to vary the rights *two contending parties, is a very wise maxim, as well as a very fortunate one for the parties who are so disputing; because by giving notice to such person to hold his hand, and offering him indemnity, he renders himself liable to the true owner, if, after such notice, he takes upon himself to decide the right.” I do not undertake to say that the sheriff may not have been justified in paying to the plaintiff the money when demanded. But, I do say, he should not be punished for holding in the money from either, until the controversy between them was settled. I think the defendant’s motive was good, and so far from his conduct being reprehensible, it received the sanction of Chancellor Harper, whose decree should be regarded as a virtual protection for the defendant. When the Chancellor took cognizance and jurisdiction of the matter, his decree should be considered as acquitting the defendant of all wilful wrong, and rescuing him from legal liability. For suppose the circuit decree had been affirmed instead of being reversed, would it be pretended that this action could have been maintained ? I apprehend not, for it would be monstrous to conclude that one party could recover under the statute of ’96, while the other party was rightfully entitled to the fund in controversy. It cannot be that the frequently uncertain result of a vexed and conflicting demand against the sheriff, should determine his liability. This would place the sheriff in a position of perilous responsibility. Two parties, for instance, a senior and junior execution creditor, might make a demand and bring actions under the statute at the same time; the matter might be litigated through all the Courts, with various success, one Court deciding one way, and another the other. And yet it is said the sheriff would be liable to the successful party, because ho did not, in the first instance, without information, give a preference to one of the parties. That is, the sheriff would be required to make decision, without argument or investigation, on a point upon which the Courts could not agree. The thing runs itself down into an absurdity. The sheriff must always act in good faith when he withholds money from contending parties, and when he is sued, it will be incumbent on him to show this, or to abide the consequences. I suppose that there cannot again be any difficulty under the Act of 1796, as the Act of *123 1839,(a) on the same subject, is more explicit in its *provisions. This opinion confirms the true meaning of this latter Act, which may be resorted to as in some measure declaratory of the former.
See 2 McM., 155 ; 2 Rich., 528, 531; 10 Rich., 120. An.
The motion for a new trial is granted.
The whole Court concurred.